IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NICOLE ACKERMAN                  :

                                 :

    v.                           : Civil Action No. DKC 2004-0113

                                 :

TOWN OF LA PLATA, MARYLAND,      :
ET AL.                           :

### MEMORANDUM OPINION

Presently pending and ready for resolution in the civil rights case are a motion by Defendant Harold E. Cunningham, Jr. for summary judgment (Paper 44) and a motion by Defendant Town of LaPlata, Maryland, and Cunningham to dismiss for Plaintiff's failure to permit discovery (Paper 55).  The issues have been fully briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for summary judgment will be granted in part and denied in part, and the motion to dismiss will be denied.

**I.  Background**

**A.  *Factual Background***

Unless otherwise stated, the following facts are either uncontroverted or construed in the light most favorable to Plaintiff.[1]  In the early morning hours of May 31, 2003, Plaintiff was driving southbound on Route 301 in La Plata,

---

[1] Subsequent to filing this suit, Plaintiff has married. Her legal name is now Nicole Beth Stuckey.

Maryland when she passed Defendant Harold E. Cunningham, an officer in the La Plata police department. At that time, Defendant was sitting in his patrol car in a parking lot adjacent to Route 301, monitoring the southbound flow of traffic. According to Defendant, he "clocked" Plaintiff traveling sixty-four miles per hour in a fifty miles per hour speed zone. Although Plaintiff disputes that she was traveling in excess of sixty miles per hour, she concedes that she was driving in excess of fifty miles per hour. After speeding past Defendant, Plaintiff continued to travel along Route 301 until she reached the intersection of Route 301 and Route 6. At this point, Defendant pulled his vehicle behind her, and after the light turned green, he activated his siren. Plaintiff proceeded to make a left turn on to Route 6 and promptly pulled her car over to the side of the road, at which time Defendant parked his patrol car immediately behind Plaintiff and approached her vehicle.

It is at this point where Plaintiff's and Defendant's competing versions of events diverge. Defendant testified that when he asked Plaintiff for her license and registration, she immediately got "combative." *See* Paper 34, Ex. E (Cunningham Dep.) at 22. He further testified that he detected a strong smell of alcohol coming from the vehicle. *Id*. at 22-27. It is

undisputed that prior to the traffic stop, Plaintiff and her sister had been at a local nightclub, where Plaintiff admits to having at least one beer.  *See* Paper 34, Ex. A (Plaintiff's Dep.) at 96.  Defendant also testified that Plaintiff's eyes appeared bloodshot and watery.

After running a check on Plaintiff's license and registration, Defendant asked Plaintiff to exit her vehicle so he could conduct a battery of field sobriety tests in order to determine if she was driving under the influence.  According to Defendant, when she stepped out of the car, she "sway[ed] a little bit, back from side to side."  Cunningham Dep. at 37–38.  Defendant then administered two field sobriety tests, which he claims Plaintiff failed.  At that point, Defendant testified that Plaintiff told him that he was going to need backup, and, immediately after he made the call, she attempted to kick him in the groin, but missed and hit him in the leg.  *Id.* at 72.  When Defendant then attempted to place Plaintiff under arrest, a brief scuffle ensued, as she, according to Defendant, "was trying to get away from" him.  *Id.* at 80.

Although, according to Defendant, she was struggling the whole time, he was quickly able to overpower her, and guided her over to the front hood of his vehicle.  He then used the front fender of the vehicle to break her balance, while she continued

3

to struggle and kick at him.  At that point, he handcuffed her and immediately made a second request for backup.  He then utilized a control technique he learned from the "wagon man" in D.C. in order to further subdue and control Plaintiff.  *Id*. at 81.  According to Defendant, this technique involves grabbing the person's handcuffed arms behind her and folding the arms up behind the person.  Defendant testified that using this technique helps an officer control a combative or struggling individual, so "you don't have to fight, injure yourself or them." *Id*. at 82.  At that point, Plaintiff "went back down" on the hood of the car, and "basically stayed put," although Defendant testified she continued to yell profanities and attempted a few more times to kick him.  *Id*. at 110.  Shortly thereafter, Officer Bagley, responding to Defendant's request for backup, arrived and assisted Defendant in placing Plaintiff in the backseat of Defendant's patrol car.  *Id*. at 117-119.

Plaintiff tells a much different story of what transpired that night.  According to her, after Defendant instructed her that she had failed the two field sobriety tests, she requested he administer an on-site breathalyzer test because she felt confident she was not drunk.  Plaintiff's Dep. at 122, 126.  At this point, he instructed Plaintiff to put her hands on the car.  Plaintiff testified that, after she promptly and without

4

objection complied with his request, he grabbed both of her wrists, that she willingly allowed him to place them behind her back, and that he violently placed handcuffs on her, grinding the cuffs into her skin which caused excessive bleeding and tearing.  *Id.* at 128-130; *see also* Paper 34, Exs. H, L. According to her, he then kicked her feet out from under her, began pulling her hair, and repeatedly slammed her head into the hood of the car.  *Id.* at 128-29.  She also testified that he was pushing her handcuffed hands up behind her and over her head, in what she described as an attempt to break her arm.  *Id.* at 132, 141.  She also testified that while she was subdued he was "grinding himself into [her] in some sexual way."  *Id.* at 141-42.  She claims that she could not and did not fight back, that she never attempted to kick him or flee from him, and that she never cursed at him.  *Id.* at 147-48.  Plaintiff testified that the assault continued until additional officers arrived on the scene.  Plaintiff said that, once in Defendant's patrol car and on the way to the station, Defendant threatened to "get [her] sister" if she told anyone about what transpired before the other officers arrived.  *Id.* at 149.

At the station, Plaintiff took a breathalyzer test which measured her blood alcohol level at .02%.  At that point, she admitted to the administering officer that she had had one beer

earlier in the day. *See* Paper 34, Ex. C (Figgins Dep.) at 21-23. Plaintiff was subsequently charged with assault and resisting lawful arrest. *See id.*, Ex. N (Statement of Charges); Ex. O (Statement of Probable Cause). She was also issued traffic citations for (1) speeding, (2) driving under the influence of alcohol, (3) driving while impaired by alcohol, (4) driving while impaired by drugs or drugs and alcohol, and (5) driving while impaired by a controlled dangerous substance. *Id.*, Exs. F, P, Q, R, and S. Several hours after she was processed, Plaintiff was taken before a Commissioner, who found probable cause existed to arrest and charge Plaintiff with assault and resisting lawful arrest. *Id.*, Exs. N, O. Plaintiff eventually pled guilty to resisting arrest, for which she received probation before judgment, and the remaining charges and citations were *nolle prossed*. *Id.*, Exs. V, W.

### B. *Procedural History*

On January 14, 2004, Plaintiff filed a civil action against Defendant Cunningham and the town of La Plata, asserting violations of Plaintiff's federal and state constitutional rights, as well as various state common law tort violations. Specifically, Plaintiff alleges: a violation under 42 U.S.C. § 1983 of her federal civil rights against both Defendant Cunningham and La Plata for false arrest and excessive force

(count I); false imprisonment (count II), false arrest (count III), defamation *per se* (count IV), assault (count V), and battery (count VI) against Defendant Cunningham; and a violation of Article 26 of the Maryland Declaration of Rights against Defendant Cunningham and La Plata (count VII). Shortly thereafter, the court granted Defendants' motion to bifurcate the claims against Defendant Cunningham in his individual capacity and the claims against La Plata and Defendant Cunningham in his official capacity. *See* Papers 11, 12.

On September 24, 2004, Defendant Cunningham filed a motion for summary judgment on all claims asserted against him in his individual capacity. Paper 34. Before Plaintiff responded, and pursuant to a joint request, the parties were granted additional time to conduct discovery and refile dispositive motions. Subsequently, on December 1, 2004, Defendant Cunningham moved a second time for summary judgment, adopting and incorporating the arguments asserted in his original motion.[2] *See* Paper 44. Also pending is a joint motion by Defendants Cunningham and La Plata to dismiss Plaintiff's action for failure to permit discovery. Paper 55.

---

[2] Because the court granted the parties additional time to conduct discovery and file dispositive motions, Defendant Cunningham's initial motion for summary judgment was denied without prejudice to refiling at a later date. Paper 38.

## II.  Motion to Dismiss For Failure to Permit Discovery

Before turning to the merits of Defendant Cunningham's motion for summary judgment, the court will address Defendants' motion to dismiss for discovery abuses.  The thrust of Defendants' argument is that Plaintiff failed to reappear for a second deposition on three separate occasions after Magistrate Judge Day had granted their motion to compel.  *See* Paper 45 (paperless order granting motion to compel deposition testimony).  That motion sought to compel Plaintiff to reappear for a deposition and answer questions pertaining to a prior lawsuit in which Plaintiff was involved that may be tangentially related to her damages claim in this one.  *See* Paper 42. According to the papers submitted, the second deposition was initially scheduled for January 31, 2005, but Plaintiff failed to appear and provided no explanation for her absence.  The deposition was rescheduled twice, but a few hours prior to both scheduled times, Plaintiff notified Defendant that she would not be able to appear, once due to sickness and once due to her counsel's imminent withdrawal.  Defendants also contend that Plaintiff has failed to supplement her interrogatory responses, also as ordered by Judge Day.  *See* Paper 43 (order granting in part motion to compel).

Fed. R. Civ. P. 37(d) allows the court to sanction parties who fail "(1) to appear before the officer who is to take the deposition, after being served with proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories . . . ." Rule 37(b) provides a broad array of sanctions the court may impose, ranging from an order establishing certain facts to the more severe entry of a default judgement. *See* Fed.R.Civ.P. 37(b)(2)(A)-(C). Defendant has requested this court impose one of the more severe sanctions–dismissal of Plaintiff's case.

Federal district courts have wide discretion, pursuant both to the sanctioning provisions in Rule 37 and their implied powers as courts of justice, to sanction parties who fail to comply with the discovery process. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) ("A primary aspect of [the court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."); *Mutual Fed. Sav. and Loan Assn. v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) ("Rule 37(d) of the Federal Rules of Civil Procedure gives the district court wide discretion to impose sanctions for a party's failure to comply with its discovery orders."); *Camper v. Home Quality Mgmt. Co.*, 200 F.R.D. 516, 518 (D.Md. 2000). However, when

severe sanctions are considered, such as dismissal, the district court's discretion is more limited, "since its 'desire to enforce its discovery orders is confronted head-on by the party's rights to a trial by jury and a fair day in court.'" *Sadler v. Dimensions Health Corp.*, 178 F.R.D. 56, 59 (D.Md. 1998) (quoting *Mutual Fed.*, 872 F.2d at 92).   Therefore, the Fourth Circuit has constructed a four-part test to determine whether severe sanctions, such as dismissal, would be appropriate: (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary; (3) the need to deter the particular type of noncompliance; and (4) the effectiveness of less drastic sanctions.   *Mutual Fed.*, 872 F.2d at 92 (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-06 (4th Cir. 1977)). "Such an evaluation will insure that only the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, will result in the extreme sanction of dismissal or judgement by default." *Id.*

Moreover, in cases dealing with the harsh sanctions of defaults and dismissals, the Fourth Circuit has emphasized the importance of warning a party prior to ordering such sanctions for discovery violations.   *See Hathcock v. Navistar Int'l*

*Transp. Corp.*, 53 F.3d 36, 40 (4th Cir. 1995) ("[T]his court has emphasized the significance of warning a defendant about the possibility of default [under Rule 37] before entering such a harsh sanction."); *Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951, 954 n.2 (4th Cir. 1987) (court considered the failure to warn a "salient fact" which distinguished cases in which default judgment was an appropriate sanction under Rule 37); *cf. Choice Hotels Int'l, Inc. v. Goodwin & Boone*, 11 F.3d 469, 471 (4th Cir. 1993) (party subject to prejudicial dismissal under Rule 41 "is entitled to be made aware of this drastic consequence of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid it").

Here, a review of the record reveals that such a severe sanction as dismissal is not warranted. Although Plaintiff has failed to appear on numerous occasions even after being instructed to do so by the court, it appears that two of those failures were due to Plaintiff's illness, as well as "irreconcilable differences" with her then-counsel which led to counsel's withdrawing from this case. *See* Papers 51, 52. Since then, Plaintiff has obtained new counsel, who has demonstrated a willingness to comply with Judge Day's discovery orders. *See* Paper 60. Additionally, Plaintiff has had no warning from this

court that her conduct might result in dismissal of her case.
As discussed *supra*, the Fourth Circuit has emphasized the
importance of pre-dismissal warnings. *See, e.g., Hathcock,* 53
F.3d at 40; *Choice Hotels,* 11 F.3d at 471; *see also White v.
Office of the Public Defender for the State of Maryland*, 170
F.R.D. 138, 148 n.8 (D.Md. 1997) (citing *Hathcock* and noting the
possibility of an "entitlement" under Rule 37(d) to notice
before the sanction of dismissal with prejudice is imposed).
Finally, it appears that Plaintiff's failure to reappear at a
second deposition to answer questions about her involvement in
a prior lawsuit, rather than about the night in question, has
not prejudiced Defendant with respect to the instant motion for
summary judgment.   Undoubtedly, Defendant has been able to
depose Plaintiff about the events giving rise to this action.
*See* Paper 34, Ex. A (Plaintiff's Dep.).   Accordingly, the court
is disinclined to dismiss Plaintiff's case at this time.

However, some lesser sanction is appropriate.   The fact
remains that over seven months have passed since Judge Day
granted Defendant's two motions to compel, and Plaintiff has yet
to reappear for a second deposition, or to supplement her
initial interrogatory responses.   Rule 37(d) permits the court
to "make such orders in regard to the [discovery] failure as are
just."   Accordingly, Plaintiff is ordered within ten (10) days

12

from the date of this Memorandum Opinion and accompanying Order
to comply fully with Judge Day's order of November 16
identifying the interrogatory responses to be supplemented, as
well as the documents to be produced. *See* Paper 43.   Further,
if Defendant still desires to depose Plaintiff, the court orders
Plaintiff to appear for such deposition within twenty (20) days
of the date on which Plaintiff's interrogatory responses are
served on Defendant.   The deposition date shall be mutually
agreed upon by counsel and their clients.   In addition,
Plaintiff is hereby on notice that further refusal to comply
with Defendant's discovery requests and this Order may result in
dismissal of her case.[3]

## III.      Standard of Review

It is well established that a motion for summary judgment
will be granted only if there exists no genuine issue as to any
material fact and the moving party is entitled to judgment as a
matter of law.   *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*,
477 U.S. 317, 322 (1986).   In other words, if there clearly

---

[3] It should be noted that Defendants' pending joint motion
seeking an award of costs and attorney's fees for Plaintiff's
failure to appear for deposition in violation of Judge Day's
order is being handled by him, and its resolution, i.e., whether
it's granted or not, has no bearing on the motions decided
today. *See* Paper 61.

exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1987).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of South Carolina v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion

14

for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The inquiry involved on a summary judgment motion "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252. Where the movant also bears the burden of proof on the claims at trial, it "must do more than put the issue into genuine doubt; indeed, [it] must remove genuine doubt from the issue altogether." *Hoover Color Corp. v. Bayer Corp.*, 199 F.3d 160, 164 (4th Cir. 1999) (internal quotation omitted), *cert. denied*, 530 U.S. 1204 (2000); *see also Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 820, 822 (D.Md. 1998) (evidentiary showing by movant "must be sufficient for the court

to hold that no reasonable trier of fact could find other than for the moving party") (internal quotation and italics omitted). Summary judgment will not be appropriate unless the movant's evidence supporting the motion "demonstrate[s] an absence of a genuine dispute as to every fact material to each element of the movant's claim and the non-movant's response fails to raise a genuine issue of material fact as to any one element." *McIntyre v. Robinson*, 126 F.Supp.2d 394, 400 (D.Md. 2000) (internal citations omitted).

## IV. Analysis

Officer Cunningham moves for summary judgment on all claims, asserting that he had probable cause to stop and arrest Plaintiff, that he did not use excessive force in doing so, and that, even if he did, he is entitled to qualified immunity. Apparently, Plaintiff no longer wishes to press most of the claims alleged in her complaint. Throughout her opposition, she expressly "consents to summary judgment as to her 42 U.S.C. § 1983 unlawful arrest claim, claims under the Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983, and common law claims of false imprisonment, false arrest, assault, battery and defamation *per se*." *See* Paper 49 at 1, 4, 8, 12, 14–15. However, Plaintiff asserts there exists "several genuine issues of material fact regarding her § 1983 excessive force and

16

Maryland Declaration of Rights claims," spending the bulk of her motion opposing summary judgment as to those claims.[4] *Id*. at 1. Accordingly, because Plaintiff has expressed her consent to summary judgment on those portions of her § 1983 and Maryland Declaration of Rights claims (counts I and VII) *not* involving claims of excessive force, as well as her common law tort claims (counts II though VI), summary judgment for Defendant Cunningham will be granted with respect to those counts.  Having narrowed the scope of this civil rights action to Plaintiff's claims of excessive force, the court will now turn to that portion of the § 1983 and Maryland Declaration of Rights claims.

**A.   *§ 1983–Fourth Amendment–Excessive Force Claim***

Defendant Cunningham argues that he is entitled to summary judgment on Plaintiff's excessive force claim on the basis of qualified immunity.  In excessive force cases, entitlement to qualified immunity must be analyzed in two steps, which are to be "considered in proper sequence." *Saucier v. Katz,* 533 U.S. 194, 200 (2001); *see also Jones v. Buchanan*, 325 F.3d 520,

---

[4]  As will be discussed below, Maryland courts have consistently construed Article 26 of the Maryland Declaration of Rights "*in pari materia* with the Fourth Amendment, such that [they] accord great respect and deference to the decisions of the United States Supreme Court in interpreting the federal amendment." *See Carter v. State,* 788 A.2d 646, 652 (Md. 2002).

526–27 (4th Cir. 2003).  The court must first resolve the issue of whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right."  *Saucier*, 533 U.S. at 201.  If the evidence establishes a violation of a constitutional right, "[t]he next, sequential step is to ask whether the right was clearly established" at the time of the events at issue.  *Id.*  If the answer is no, that is, that a right is not "clearly established," the qualified immunity doctrine shields a defendant officer from liability from suit. The court should make a ruling on the qualified immunity issue "early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  *Saucier,* 533 U.S. at 200.

The Fourth Amendment's freedom from unreasonable searches and seizures unquestionably encompasses the right to be free of excessive force during an arrest.  *See Jones,* 325 F.3d at 527. This right is violated when an arresting officer's actions are not "objectively reasonable in light of the facts and circumstances confronting [him]."  *Graham v. Connor*, 490 U.S. 386, 397 (1989).  The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

18

*Id.* at 396. Thus, the determination of whether the force used during the course of an arrest was reasonable is extremely fact dependent. The application of the Fourth Amendment reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.; see also Jones*, 325 F.3d at 527. Accordingly, summary judgment is not proper in excessive force cases if the moving party has not "quieted all disputed issues of material fact." *Olson v. Layon Hill Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002).

In this case, whether Plaintiff posed an immediate safety threat to Defendant or whether she was actively attempting to resist arrest at the time of the incident is the center of a factual dispute between the competing versions of the parties. According to Plaintiff's deposition testimony, she obeyed all of Defendant's instructions, never attempted to struggle or flee, and, without cause or provocation, was gratuitously attacked. *See* Plaintiff's Dep. at 128-42. She specifically testified that he handcuffed her in such a manner as to cause her wrists to bleed and swell, kicked her legs out from under her, wrenched up

19

her handcuffed arms in such a manner as to cause her severe pain, pulled her hair, and repeatedly banged her head against his vehicle. *Id.* Plaintiff testified she did not fight back or struggle, but only screamed for help. Furthermore, Plaintiff's sister, Joy, who was with her that night, corroborates Plaintiff's version of events. *See* Paper 34, Ex. B (Ackerman Dep.) at 38, 41, 45, 46. According to Joy, the attack was so violent, she got out of the car, yelled at Defendant Cunningham to "get the F off of my sister," and called the police on her cellular phone. *See id.* at 46, 49.

As mentioned above, Defendant Cunningham's testimony provides a drastically different version of what occurred that night. In addition, he points to the deposition of Officer Bagley, the first officer to arrive on the scene, in support of his version. Bagley testified that it appeared to him that Plaintiff was "struggling," "squirming," and "wiggling" as if she was "trying to get away from him." Bagley Dep. at 44, 46. Moreover, Wayne Dyer, who was pumping gas at a nearby station when the incident occurred, testified that he saw Plaintiff "trying to get away from" Defendant, and that at one point, it appeared one of her wrists was already cuffed, while Defendant struggled to cuff the other. *See* Paper 34, Ex. J (Dyer Dep.) at 9-11. Although Defendant Cunningham, Officer Bagley, and Mr.

Dyer present a different version of events from Plaintiff and her sister, the varying accounts merely create a material dispute of fact as to what actually occurred at the scene, making summary judgment inappropriate.

Finally, Defendant attempts to discredit Plaintiff's version of events with a videotape taken at the Charles County Detention Center immediately after Plaintiff arrived for processing. *See id.*, Ex. K.  He argues that this videotape refutes Plaintiff's excessive force claim because the footage does not show any trauma to Plaintiff's face or head, and that Plaintiff fails to mention in the video any injuries to her face, although she adamantly pointed out the injuries to her wrists. *See* Paper 34 at 25.  Defendant cites to an unpublished Fourth Circuit case in which the court reversed the trial court's denial of summary judgment on the basis that videotaped footage offered by the defendants "confirm[ed] enough of the officers' testimony and destroy[ed] enough of the supposed eyewitnesses's version to require that judgment be given to the officers." *Stewart v. Prince George's County, Maryland*, 75 Fed.Appx. 198, 202–03 (4th Cir. Sept. 23, 2003) (per curiam).  In making this argument, Defendant overlooks the fact that the video footage in *Stewart* "flatly contradicted" the plaintiff's witnesses' testimony that one of the defendant officers was "pushing, grabbing, or

21

jerking" the decedent as the two men entered a Target store. *Id*. at 204. Rather, the video "plainly show[ed]" that contrary to what the plaintiff's witnesses asserted, the decedent reentered the store without any physical coercion. *Id*. Moreover, beyond what the video affirmatively showed, the witness testimony that the decedent was brutalized just inside the front door, as opposed to inside an interior security room as the defendants' asserted, was contradicted by the blood evidence found in the security room. *Id*.

Here, the video footage offered by Defendant does not show any of the events leading up to and during the traffic stop, but rather chronicles a small portion of time occurring after Plaintiff arrived at the detention center. Whatever weight one may wish to accord that footage, and to what extent it, coupled with the testimony of Defendant Cunningham, Officer Bagley, and Mr. Dyer, undercuts Plaintiff's version of events, it does not flatly contradict her version, nor does it quiet all issues of material fact. Plaintiff's version, if accepted, would be sufficient to demonstrate that Defendant's conduct violated Plaintiff's clearly established constitutional right to be free from excessive police force. "Of course, jurors may choose not to credit [Plaintiff's] evidence, but if they do, it would constitute no improper 'second-guessing' to conclude that

[Defendant Cunningham] violated [Plaintiff's] Fourth Amendment right to be free from excessive police force." *Jones,* 325 F.3d at 531.

Even if a constitutional violation occurred, however, Cunningham may be entitled to qualified immunity if it is shown that he had an objectively reasonable basis for believing in the lawfulness of his acts. *Jones,* 325 F.3d at 531. Officers are "entitled to summary judgment on the ground of qualified immunity if they can establish that reasonable officers could have believed that their actions were lawful in light of both clearly established law and the information that the officers possessed at the time." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). In excessive force cases, the "inquiry on qualified immunity is whether a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). Here, however, as mentioned above, the circumstances surrounding Defendant's use of force are in dispute. "When resolution of a case depends on determining what actually happened, 'the issue is inappropriate for resolution by summary judgment.'" *Vathekan v. Prince George's County*, 154 F.3d 173, 180 (4th Cir. 1998) (quoting *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992)). This is because "[d]isputed

23

facts are treated no differently in this portion of the qualified immunity analysis than in any other context." *Buonocore v. Harris*, 65 F.3d 347, 359 (4th Cir. 1995). Here, the parties present different versions of what occurred in the early morning hours of May 31, 2003. "Credibility of conflicting testimony is not, on a summary judgment motion, an issue to be decided by the trial judge." *Summerlin v. Edgar*, 809 F.2d 1034, 1039 (4th Cir. 1994). Construing the facts in the light most favorable to Plaintiff, "years before [2003], it was clearly established that a police officer was not entitled to use unnecessary, gratuitous, and disproportionate force against a handcuffed, secured citizen, who posed no threat to the officer or others," who complied with his every directive, and who was not [at that time] attempting to evade arrest. *Jones*, 325 F.3d at 534. Accordingly, the evidence is sufficient to raise a genuine dispute of material fact precluding summary judgment on qualified immunity grounds. The motion to dismiss Plaintiff's § 1983 excessive force claim against Defendant is, therefore, denied.

### B.   *Maryland Declaration of Rights Claim*

In addition to bringing a § 1983 claim, Plaintiff has alleged a state constitutional violation under Article 26 of the Maryland Declaration of Rights. Article 26 is consistently held

to be "*in pari materia*" with the Fourth Amendment to the United States Constitution.  *See Carter,* 788 A.2d at 652.  Accordingly, the same facts that supported Plaintiff's § 1983 excessive force claim under the Fourth Amendment apply with equal force to Plaintiff's state constitutional claim under Article 26.  *See Solis v. Prince George's County*, 153 F.Supp.2d 793, 803 (D.Md. 2001).

Nevertheless, Defendant argues he is entitled to summary judgment on the Declaration of Rights claim for two reasons. First, he contends that this claim, as brought by Plaintiff in her complaint, "only includes a claim that she was subjected to an unlawful search and seizure, not that she was subjected to an excessive use of force." *See* Paper 50 at 5.  Because Plaintiff conceded to entry of summary judgment on the search and seizure portion of her § 1983 claim on the basis that Defendant Cunningham had probable cause to arrest, Defendant argues he is entitled to summary judgment on the Declaration of Rights claim as well.  Second, Defendant argues that even if Plaintiff's state constitutional claim includes a claim for excessive force, he is entitled to statutory immunity under Maryland law.

To support Defendant's first argument, he points to the caption to Plaintiff's Maryland Declaration of Rights claim in the complaint, which states "UNLAWFUL SEARCH AND SEIZURE," as

well as to paragraph 55, in which Plaintiff alleges that "[i]n violation of Plaintiff's rights under Article 26 of the Maryland Declaration of Rights, Defendant Cunningham unlawfully detained, searched and arrested Plaintiff." *See id.*, ¶ 55.   *See* Paper 1 (count VII).  He argues that the basis for asserting this claim is devoid of any reference to a claim of excessive force, and, thus, should not be interpreted to include such a claim.   In light of the complaint as a whole, however, and considering the other paragraphs included under count VII, the court finds this argument to be a bit specious, and declines Defendant's invitation to construe count VII so narrowly.  Paragraph 53 explicitly "incorporates by reference all of the allegations in paragraphs 1 through 52 into this Count," paragraphs which undoubtedly make clear that one of Plaintiff's claims is for unlawful excessive force. *See id.*, ¶ 53.  Moreover, paragraph 56 explicitly provides that as a result of both Defendant Cunningham's and La Plata's "violations of Plaintiff's constitutional rights, Plaintiff has suffered," *inter alia*, "intense physical pain and suffering." *See id.*, ¶ 56.  Again, this undoubtedly refers back to Plaintiff's allegations concerning the alleged "brutal physical attack" suffered at the hands of Defendant Cunningham, which she believes resulted from a policy, custom, and practice of La Plata. *See id.*, ¶¶ 13-18,

26

21-31.  Accordingly, Plaintiff's Maryland Declaration of Rights claim does incorporate a claim for excessive force akin to that alleged under count I.

It has already been established that disputed issues of material fact exist as to Plaintiff's Fourth Amendment excessive force claim, rendering summary judgment on that claim inappropriate.  The court finds no distinctions, material or otherwise, between Plaintiff's Article 26 and her Fourth Amendment claims.  Moreover, under Maryland law, "[u]nlike in a § 1983 action and unlike in an action for some common law torts, neither the local government official nor a local governmental entity has available any governmental immunity in an action based on rights protected by the State Constitution." *DiPino v. Davis*, 729 A.2d 354, 371 (Md. 1999).[5]  Accordingly, Defendant's

---

[5] Moreover, even if Maryland law did provide a limited immunity to municipal officials for state constitutional violations, it is clear that such immunity does not apply where the official acts with malice.  *See* Md.Code.Ann., Cts. & Jud. Proc. § 5-507(b)(1) (2002 Repl. Vol.) ("An official of a municipal corporation, while acting in a discretionary capacity, *without malice*, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.").  For purposes of public official immunity, Maryland courts define malice as conduct which is "motivated by ill will, by an improper motive, or by an affirmative intent to injure." *Shoemaker v. Smith*, 725 A.2d 549, 560 (Md. 1999); *see also Williams v. Mayor & City Council of Baltimore*, 753 A.2d at 57 n.16 (Md. 2000) (noting that malice is established by proof that
(continued...)

motion for summary judgment as to Plaintiff's excessive force claim under Article 26 against Defendant Cunningham is denied.

**V.   Conclusion**

For the foregoing reasons, Defendant Cunningham's motion for summary judgment is granted in part and denied in part.  The motion to dismiss for failure to permit discovery is denied.  A separate Order will follow.


                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge

                                    July 27, 2005


---

⁵(...continued)
the defendant performed "an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure [the plaintiff])."  As discussed *supra*, Plaintiff testified that Officer Cunningham violently and gratuitously attacked her even though she complied with all of his requests, posed no threat, and offered no resistance.  The bulk of the attack allegedly occurred after she was handcuffed and subdued.  Moreover, she testified that he threatened to harm her sister if she told anyone about the attack.  Therefore, Plaintiff's version of the facts is sufficient to support a reasonable inference that Defendant Cunningham acted with malice when he arrested Plaintiff using allegedly excessive and unreasonable force. "Because the question of 'malice' turns on the arresting officer's motive and intent, [the court is] mindful of oft-repeated admonitions against resolution of such issues on summary judgment."  *Thacker v. Hyattsville*, 762 A.2d 172, 189 (Md.Ct.Spec.App. 2000).